UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVELYN AUTUMN MAJEL HWANG,

    Plaintiff,

v.   Case No.  8:18-cv-1096-T-27AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

**I.**

**A.**    **Procedural Background**

Plaintiff filed an application for SSI (Tr. 154).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 61-78).  Plaintiff then requested an administrative hearing (Tr. 91).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-47).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-21).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1997, claimed disability beginning May 20, 2016 (Tr. 19, 12). Plaintiff obtained a seventh-grade education (Tr. 35). Plaintiff has no past relevant work experience (Tr. 19). Plaintiff alleged disability due to panic attacks, paranoid reasons for limitation, and cannot work (Tr. 198).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 20, 2016, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: morbid obesity, lumbar thoracolumbar levoscoliosis, depressive disorder, anxiety disorder, panic disorder with agoraphobia, posttraumatic stress disorder (PTSD), cannabis use disorder, attention deficit hyperactivity disorder, impulse control disorder, and headaches (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform less than the full range of light work; can occasionally climb ladders, ropes, or scaffolds; can perform simple, routine, and repetitive work with occasional contact with coworkers, supervisors, and the general public (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).

Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner (housekeeping), advertising material distributor, and blade balancer (Tr. 20). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot

perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews

the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues that the ALJ erred by (1) improperly evaluating the opinions of the state agency physicians, Dr. Maurice Rudmann and Dr. Michelle Butler; (2) improperly evaluating the Licensed Mental Health Counselor's ("LMHC") opinion, Dr. Sandra Treston; and (3) finding that there are a significant number of jobs available in the national economy that the Plaintiff could perform. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. RFC

The Plaintiff alleges that the ALJ erred by (1) improperly evaluating the opinions of the state agency physicians, Dr. Maurice Rudmann and Dr. Michelle Butler, and (2) improperly evaluating the LMHC's opinion, Dr. Sandra Treston.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). According to the ruling, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at *5. Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

### a. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the

ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). A claimant's RFC is, ultimately, "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).

State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The weight given to the opinion of a state agency medical consultant depends on whether the opinion is supported by and consistent with the record as a whole. SSR 96-6p. In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering an RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record

8

in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

### i. Dr. Maurice Rudmann and Dr. Michelle Butler

Plaintiff alleges that the ALJ improperly evaluated Plaintiff's state agency physicians' opinions, Dr. Maurice Rudmann and Dr. Michelle Butler, because the ALJ failed to account for their limitations concerning (1) ability to complete a normal workday and workweek and (2) performing very simple tasks.

The ALJ explicitly stated that she gave great weight to Dr. Rudmann's and Dr. Butler's opinions (Tr. 14, 18). Dr. Rudmann found that the Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Nevertheless, Dr. Rudmann opined that the Plaintiff "[s]hould do well in work settings with procedures that focus on recalling/carrying out very simple repetitive tasks. May occasionally have difficulties working in coordination with others *&/or* completing normal workday/workweek d/t mental issues" (Tr. 57-58) (emphasis added). Dr. Rudmann further found that Plaintiff has moderate difficulties in concentration, persistence, or pace (*id.*). Dr. Butler's findings and opinion mirror Dr. Rudmann's (73-74).

The Plaintiff's contention that Dr. Rudmann's and Dr. Butler's opinions set forth limitations that preclude work and require a finding of disability is unavailing. The ALJ accounted for Dr. Rudmann's and Dr. Butler's opinions by limiting Plaintiff's RFC to "perform simple, routine, and repetitive work with occasional contact with coworkers, supervisors, and the general public." (Tr. 15). The "may" phrasing in the doctors' opinions is neither set forth in vocational terms, nor is it indicative of significant limitations that would alter the ALJ's findings. In other words, neither opinion supports Plaintiff's allegation that she would be unable

9

to complete full-time work. More so, both doctors qualified their opinion in terms of "&/or", whereby the ALJ accounted for the "difficulties working in coordination with others" through limiting Plaintiff to "occasional contact with coworkers, supervisors, and the general public." (Tr. 57-58, 15).[1] Further, the ALJ incorporated the limitation of simple, routine, and repetitive work to properly account for the moderate limitations in concentration, persistence, and pace. *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (holding that limiting a plaintiff to "simple, unskilled, routine, and repetitive tasks" accounts for moderate limitations in the areas of concentration and persistence.") The ALJ found that these opinions, in conjunction with all the other evidence in the record, supported that Plaintiff could perform simple, routine, and repetitive work (Tr. 15). As such, Dr. Rudmann's and Dr. Butler's opinions were properly accounted for and the ALJ's opinion is supported by substantial evidence.

### ii.  Dr. Sandra Treston

Further, the Plaintiff alleges that the ALJ improperly evaluated Plaintiff's LMHC's opinion by assigning it little weight. A licensed mental health counselor is considered a non-medical "other source." SSR 06-03P. While an ALJ is required to consider such an opinion as it "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function", a non-medical other source "cannot establish the existence of a medically determinable impairment." *Id.* Further, an ALJ is not required to give any significant weight to an "other source" opinion. *Id.*

The ALJ summarized Dr. Treston's opinion as follows:

> Sandra Treston, LMHC, the claimant's counselor from March 2015 to February 2017, opined that the claimant's PTSD significantly limits her ability to function in all areas of life (Exhibit 24F). Further, she opined that there is a severe anxiety with panic, an inability to trust others, life skill deficits, and inabilities to concentrate prevent her from seeking and

---

[1] Plaintiff does not contest the ALJ's social limitations in the RFC.

> maintaining employment, interacting appropriately with others, developing healthy boundaries in relationships, and taking care of her activities of daily living (Exhibit 24F).

(Tr. 18-19). As a preliminary matter, because Dr. Treston is a mental health counselor, her opinion is neither an acceptable medical source which can establish the existence of a medical impairment, nor is it entitled to significant weight. Here, the ALJ's analysis of Dr. Treston's did not consist solely of qualifying her as a non-acceptable medical source (Tr. 19). On the contrary, the ALJ properly considered Dr. Treston's opinion and gave it little weight upon noting throughout that Dr. Treston's opinion is inconsistent with the record as a whole (Tr. 14-19). *See, e.g.*, *Szilvasi v. Comm'r of Soc. Sec. Admin.*, 555 F. App'x 898 (11th Cir. 2014) (finding that the ALJ's decision was supported by substantial evidence when giving little weight to a non-acceptable source opinion that was inconsistent with the record). In fact, the ALJ may reject *any* opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

For instance, the ALJ noted that Dr. Treston's opinion that the Plaintiff cannot properly interact with others and develop healthy boundaries in relationships fails to take into consideration Plaintiff's "demonstrated ability to cooperate with a variety of medical providers and the consultative examiner" (Tr. 14). Then, the ALJ stated that Dr. Treston's opinion that Plaintiff is unable to concentrate is inconsistent with "the claimant's own admissions and the generally normal mental status findings of memory, attention, and concentration noted in psychiatric treatment records" (Tr. 14-15). In support, the ALJ noted that Plaintiff reported being able to follow written and spoken instruction well and could handle a savings account and use a checkbook (Tr. 219-20, 13-14). Further, the ALJ noted that the extent of Dr. Treston's limitations "are not consistent with the generally unremarkable mental status findings noted throughout treatment records (Exhibits 7F; 10F; 12F-13F; 19F; 21F)." The ALJ also noted that

11

Plaintiff had only one-term psychiatric hospitalization during the relevant period beginning with her alleged onset date in May 2016, during which she quickly stabilized (Tr. 366-70, 393-410). The ALJ cited to mental status examinations that generally revealed cooperative behavior and intact attention, concentration, and memory, even when Plaintiff experienced some emotional distress (Tr. 393-410, 444-77, 499-528, 553-69, 816-25). Finally, even though the Plaintiff notes some mental health examination notes that support Dr. Treston's opinion, it fails to detract from the substantial evidence supporting the ALJ's decision. *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that "[e]ven if the evidence preponderates against the Commissioner's findings, the court must affirm if the decision reached is supported by substantial evidence"); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (noting that, in reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.). As such, the ALJ properly considered Dr. Treston's opinion and the ALJ's opinion is supported by substantial evidence.

### B. VE

Finally, Plaintiff argues that the ALJ erred by finding that there are a significant number of jobs available in the national economy that the Plaintiff can perform. Specifically, the Plaintiff argues that the VE's testimony does not constitute substantial evidence because the VE relied on SkillTran in obtaining the number of jobs available in the national economy.

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the


claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).

There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("Grids") or by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. Indeed, exclusive reliance on the Grids is not appropriate under either of those circumstances. *Phillips*, 357 F.3d at 1242. For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227. Further, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT". *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). If the ALJ fails to fulfill this duty, the decision is not supported by substantial evidence. *Id.*

Lately, this Court has seen an upward trend in challenges to a VE's testimony. Indeed, just a few weeks ago, the Supreme Court issued an opinion providing guidance regarding a

VE's testimony and substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (holding that a VE's refusal to provide the data relied upon does not categorically preclude such testimony "from counting as substantial evidence"). In *Biestek*, the ALJ relied upon the VE's testimony in finding that the plaintiff can perform jobs available in substantial numbers in the national economy. *Id.* at 1153. The VE's opinion was mostly based upon private market-survey data. *Id.* On cross-examination, the VE refused to provide the data relied upon and the ALJ intervened by noting that such would not be required of the VE. *Id.* Interestingly, the parties conceded that, "[a]ssuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* at 1155. Importantly, the Court noted that the "inquiry, as is usually true in determining the substantiality of evidence, is case-by-case . . . [i]t takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157.

While the undersigned recognizes that the issue as framed here is distinguishable, *Biestek* nonetheless provides guidance for reviewing challenges to the VE's testimony, as here. In this instance, prior to the VE testimony, Plaintiff's attorney explicitly noted on the record that he had no objection to the qualifications of the VE and the VE testifying (Tr. 43). As such, the VE proceeded to testify that the Plaintiff could perform the following jobs: cleaner (housekeeping) (with 124,000 jobs available in the national economy); advertising material distributor (with 43,000 jobs available in the national economy); and blade balancer (with 9,500 jobs available in the national economy) (Tr. 44). Plaintiff argues that the VE's testimony fails to constitute substantial evidence because the VE relied on SkillTran to obtain the number of jobs available in the national economy. The Plaintiff relies upon the following portion of the cross-examination during the administrative hearing:

14

>       Q: You came up with those numbers, do you use Skil[sic]Tran?
>       A: I do.
>       Atty: Thank you. I have no further question[sic], Your Honor.

(Tr. 46). The only guidance directly concerning the use and reliability of software programs originates from some district courts. A few held that a VE's *exclusive reliance* on a software program is reversible error as it fails to amount to substantial evidence. *See, e.g.*, *Vargas v. Comm'r of Soc. Sec.*, Case No. 6:17-cv-817-Orl-KRS, at *4-5 (M.D. Fla. May 3, 2018); *Woodard v. Astrue*, No. 1-10-cv-327-DBH, 2011 WL 2580641, at *5 (D. Me. Jun. 28, 2011), adopted by 2011 WL 2890371 (D. Me. July 19, 2011)). To that effect, other courts held that a VE's use of software, such as Skill Tran, constitutes substantial evidence *when used in conjunction* with other resources. *See, e.g.*, *Dorman v. Astrue*, No.12-40023-TSH, 2013 WL 4238315, at *8-9 (D. Mass. May 21, 2013); *Villareal v. Colvin*, No. EDCV 12-01640-JEM, 2013 WL 3071259, at *6 (C.D. Cal. June 18, 2013).

Nevertheless, even if this Court were to accept the proposition set forth by the aforementioned courts, Plaintiff's contention that the record establishes the VE's exclusive reliance on software is unavailing. Unlike the cases cited by Plaintiff, where the VE's exclusive reliance on the software program was unequivocal on the record, the record here fails to establish as such. As a preliminary matter, it cannot be gleaned from the brief cross-examination that the VE actually used Skill Tran in *this* case or simply meant that they use the software in other cases, generally. Further, the testimony does not establish the fact that the VE did not *also* rely on their own expertise, experience, or other resources. *See, e.g.*, *Villareal v. Colvin*, No. EDCV 12-01640-JEM, 2013 WL 3071259, at *5 (C.D. Cal. June 18, 2013) (noting that a plaintiff cannot complain that a VE's methodology is undisclosed when his counsel had the opportunity to cross-examine Ms. Porter on that issue but failed to do so).

Further, without more in the record demonstrating otherwise, the VE's testimony was not damaged, and certainly not to the extent that the undersigned finds error in the ALJ's reliance on the VE's testimony as substantial evidence. *Biestek* emphasized that a VE's testimony could indeed fail to constitute substantial evidence when a record sets forth *several* aspects undermining their credibility. For instance, *Biestek* hypothesized that a less than well-credentialed VE, who fails to provide supporting data, and their testimony is "so feeble, or contradicted" would fail the substantial evidence bar. *Id.* at 1155-56. Such is not the case here. The VE's credentials were un-objected to, and at no point during the hearing did the VE's testimony appear weak or contradicted, so as to amount to their credibility being damaged. Importantly, when an "ALJ views the expert and her testimony as otherwise trustworthy, and thinks she has good reason to keep her data private, her rejection of an applicant's demand need not make a difference." *Id.* at 1156. Similarly, the VE's limited cross-examination on Skill Tran did not damage an otherwise trustworthy testimony—and as *Biestek* emphasized, such an inquiry is performed on a case-by case basis, where all the testimony of the VE, along with the record, is taken into account. *Id.* at 1157. Thus, the undersigned finds that the ALJ's decision that the VE's testimony constituted substantial evidence was proper. As such, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**IV.**

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 7th day of May, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

17

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


cc: Hon. James D. Whittemore
    Counsel of Record